**E. J. McAleer & Co., Inc. v. Iceland Products, Inc.**

Before Shughart, P. J. and Weidner, J.

*Samuel B. Fortenbaugh, Jr., Clark, Ladner, Fortenbaugh & Young,* and *Robert R. Black,* for plaintiff.

*William D. Boswell, Berman & Boswell,* and *Mark E. Garber, Jr.,* for defendants.

SHUGHART, P. J., June 4, 1973.—Plaintiff, E. J. McAleer & Company, trading as Mrs. Paul's Kitchens (hereafter referred to as Mrs. Paul's) has instituted this action in assumpsit against Iceland Products, Inc. (hereafter referred to as Iceland) and Samband Isl. Samvinnufelaga (The Federation of Iceland Co-Operative Societies) (hereafter referred to as Samband) for their alleged breach of a contract to furnish plaintiff 5,000,000 pounds of frozen codfish block in 1969-1970. Mrs. Paul's alleges damages of $1,856,816.83 as follows: (a) additional cost of substitute fish, assuming its availability, $248,855; (b) additional manufacturing cost in processing standard block to contract size, $110,710.35; (c) five percent loss of profit, $497,251.48; and (d) damages to going-concern value, reputation, and business in the national market, $1,000,000.

After the disposition of initial jurisdictional issues, Iceland and Samband submitted written interrogatories to plaintiff pursuant to Pennsylvania Rule of Civil Procedure 4005. Mrs. Paul's supplied much of the requested information but objected to several requests as being outside the scope of discovery. On March 20, 1973, defendants jointly filed a motion to permit inspection of documents, in accordance with Pennsylvania Rule of Civil Procedure 4009, concerning the matters previously objected to by plaintiff. Mrs. Paul's filed timely objections to these requests, briefs were submitted and oral argument has been presented.

Rule 4009 permits a party to inspect documents and other tangible property of the opponent subject to the limitations of Rules 4007 and 4011. Rule 4007(a) allows discovery or inspection only when it concerns nonprivileged matters which are "relevant" and will "substantially aid" in the preparation of the case. In essence, Rule 4011 states that discovery is not permitted when it: (a) is in bad faith; (b) causes unreasonable annoyance, embarrassment or expense; (c) would require disclosure of privileged matters or secret processes; (d) would require disclosure of information prepared or acquired in anticipation of litigation; (e) would require an unreasonable investigation; (f) would require giving an expert opinion over deponent's objection.

As our courts have previously emphasized:

"[N]o hard and fast rule can be laid down as to what must be disclosed under the Discovery Rules, but . . . each case must be determined upon its own particular facts as they appear in the pleadings": Basom v. Rosser, 3 D. & C. 2d 631, 635 (1955).

Some framework can, however, be placed upon our analysis. Many of defendants' requests for inspection are broadly phrased and plaintiff's objections, therefore, revolve primarily upon assertions that the requests are not relevant, will not be of substantial aid to defendants, and will place unreasonable burdens upon plaintiff. It is generally agreed that the party requesting inspection must indicate that the information desired will be relevant and of substantial aid in preparing the case: Kolansky v. Hills, 34 D. & C. 2d 751, 753 (1964). The burden then shifts to the other side to show that the discovery is precluded by the exceptions of Rule 4011. Mere inconvenience or annoyance, however, cannot defeat a need rising

out of the pleadings: Friedman v. Pittston City, 46 Luz. 283 (1956).

We believe that the best method of evaluating these factors is set forth in Venito v. Pennsylvania Railroad Co., 10 Chester 237 (1960), where the court stated, at page 240:

"Where a reasonable likelihood of relevancy to the subject matter of the action as it relates to the issues raised by the pleadings appears, the interrogatory should be allowed as relevant, but where this is not reasonably apparent and where the interrogatory is so broadly phrased as to embrace information which is entirely too remote, or which could not be relevant at trial, it should not be allowed.

"[A]lmost anything even remotely connected with a case might be of substantial aid to the inquirer, even if only for the purpose of discarding it once it is known. This, in our opinion, further justifies our view that a more restricted interpretation should be placed upon the requirements of relevancy. Were it not so, virtually any information sought might be deemed to be relevant and to be a substantial aid to the inquirer.

"Generally speaking . . . [whether a party is being unreasonably annoyed, embarrassed, oppressed, caused expense, or caused to make an investigation] will bear a strong relation to relevancy. It is an unreasonable burden to require a party to conduct an investigation in order to answer interrogatories concerning matters that 'might possibly' for some remote reason be usable at trial. To hold otherwise is to allow a party to probe and pry without limitation." (Bracketed portion added.)

The above analysis is particularly important in view of the fact that Mrs. Paul's and Iceland are busi-

ness competitors in the same market. Broad requests for inspection by a competitor are not to be granted where there is not a showing of relevancy or where it would reveal confidential information or trade secrets: Hagy v. Premier Manufacturing Corp., 404 Pa. 330, 332 (1961). On this basis, we will examine the specific requests for inspection made by defendants.

*Request No. 1.* Financial statements of Mrs. Paul's, including balance sheets and profit and loss statements for the fiscal or calendar years of plaintiff, Mrs. Paul's, which include January 1, 1965, and December 31, 1971, as well as any notes or separate statements made by the independent certified public accountants of plaintiff relative thereto.

Plaintiff has provided the financial statements but objects to the production of the accountant's notes. Plaintiff has alleged approximately $1.5 million in damages to national reputation, etc., and in lost profits. In order to provide defendants an opportunity to meet the allegations, they must be permitted to examine plaintiff's business records insofar as the requests are relevant and reasonable. The accountant's explanations are fundamental to an understanding of the financial statements and, therefore, any information pertinent to the financial statements compiled by the accountants is subject to defendants' inspection.

Plaintiff claims that the communications with its accountants are privileged, apparently under the Act of May 26, 1947, P. L. 318, as amended, 63 PS §9.11a, which establishes a limited accountant-client privilege in the Commonwealth. However, this statute excludes from the privilege any information acquired by the accountant as a result of an "examination of audit of or report on any financial statements, books, records, or accounts, which he may be engaged to make":

Marine Midland Trust Company of Southern New York v. Douvanis, 50 D. & C. 2d 403, 409 (1970). Also see United States v. Bowman, 358 F.2d 421 (3d Cir. 1966). Since the accountants could be required to produce their notes and statements relative to the financial statements prepared for plaintiff, we fail to see how plaintiff can claim the information is privileged.

*Request No. 2.* The books, records, memoranda and statements from which the information was obtained to arrive at the totals that would be indicated on the balance sheets and profit and loss statements requested to be produced under paragraph 1 hereof.

Defendants' request is so broad as to include practically all of plaintiff's records for a seven-year period. Although defendants are entitled to any reasonable and relevant discovery in preparing their case, they are not entitled to indiscriminately sift through seven years of records in the remote hope of finding a jewel buried somewhere in the midst.

*Request No. 3.* The books and records of plaintiff Mrs. Paul's which would indicate the suppliers of Mrs. Paul's of fish and fish products beginning January 1, 1965, through December 31, 1971, excluding the time period of February 1969 through June 1971, inclusive; which records should set forth the type of fish, date of delivery, vendor, pounds delivered, and price paid by plaintiff per pound and price actually paid by Mrs. Paul's and date of payment as to each shipment as well as date and composition of invoice.

Defendants are seeking to examine virtually all records relating to Mrs. Paul's purchases of fish over a span of 55 months when plaintiff has exhaustively prepared the requested information for the contract period. We fail to see any relevance of this information to the alleged damages, and even were relevance

shown, we would hesitate to compel plaintiff to undertake the monumental task of compiling this information without a specific showing by defendants of what value it would be in preparing their case.

*Request No. 4.* Copies of correspondence between Mrs. Paul's and its suppliers of fish and fish products during the time period from January 1, 1965, to December 1, 1971, which relates to prices charged, paid, or to be paid, in connection with the purchase by Mrs. Paul's of fish and fish products from others.

Requiring plaintiff to produce the information for the stated time frame is patently unreasonable, as explained in regard to Requests Nos. 2 and 3 above. We do, however, feel that the correspondence during the contract period is relevant and may aid defendants. Iceland and Samband will be allowed to inspect correspondence between Mrs. Paul's and its suppliers during the period from February 1969 to June 1971.

*Request No. 5.* Records of plaintiff which list or would provide names and addresses of each customer of Mrs. Paul's for the years beginning December 31, 1965, and ending December 31, 1971, as well as sales records indicating type or types and quantity or quantities of finished product sold to such customers and prices received therefor.

Although this information is relevant to the damages claimed by plaintiff, Mrs. Paul's objects to this disclosure, arguing that the customer list is a trade secret. Restatement, Torts, §757, comment b, defines trade secret as:

"[A]ny formula, pattern, device or *compilation of information* which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be . . . *a list of customers.*" (Italics supplied.)

Pennsylvania recognizes that certain customer data

is privileged as a trade secret: American Ice Co. v. Royal Petroleum Corp., 261 F.2d 365 (3d Cir. 1958).

We feel it would be manifestly unfair to require plaintiff to supply its competitors with information revealing the price and quantities sold to named customers. The exposure of this information might well destroy Mrs. Paul's competitive edge over Iceland. On the other hand, we cannot allow Mrs. Paul's to use this facade to prevent the revelation of information important to defendants' defense to the claim of almost $1.9 million in damages. Therefore, we will require plaintiff to furnish defendants with a list of sales of various fish and fish products at various prices over the period from 1965 to 1971.

*Request No. 6.* Records of plaintiff which indicate cost factors which are used by plaintiff in the determination of prices to be charged for finished products, which information should encompass the years beginning January 1, 1965, and ending December 31, 1971.

In determining whether the cost factors are relevant to the issues in this case, we are guided by the statement of Judge Sheely in Sharrer v. Harman, 18 D. & C. 2d 313 (1959), at page 315:

"Whether defendants should be permitted to examine the records of the plaintiff's business depends upon the extent to which the plaintiff may use such records or information contained therein to establish his claim for damages."

Plaintiff has a duty to mitigate damages and, therefore, the cost factors for the contract period used to determine prices are relevant to establishing the claim. When the cost factors are produced in conjunction with the sales data, provided pursuant to Request No. 5, we feel it will provide defendants a reasonable appraisal of plaintiff's mitigation of damages. How-

ever, the cost factors for the contract period are the only ones which appear relevant and the inspection will be limited to that time span.

*Request No. 7.* Records of plaintiff which indicate raw material costs and overhead costs of plaintiff during period beginning January 1, 1965, and ending December 31, 1971, excluding overhead costs from November 1970 through February 1971, which were specifically furnished to defendants by interrogatory answers.

Plaintiff has produced financial statements disclosing the breakdown of costs over the period from 1965 to 1971. Mrs. Paul's has also supplied detailed cost information covering the contract period. Thus, we cannot see the relevancy of this request. Further, we cannot visualize what additional assistance this information could provide defendants in preparing the case, since plaintiff has supplied virtually the same information in responses to other requests made by Iceland and Samband. Therefore, we will not require Mrs. Paul's to expend the effort and expense necessary in producing this information.

*Request No. 8.* Detailed records of plaintiff as to all production costs, direct or indirect, in detail in accordance with normal accounting procedures for the period beginning January 1, 1965, and ending December 31, 1971.

Plaintiff has claimed damages for the increased cost of processing standard sized codfish block to contract size. It is obvious that the production costs for the *contract* period become important in calculating these damages. Inspection of these records will, therefore, be allowed so long as the information is not repetitive of data already supplied. The disclosure of production costs will, however, be limited to the contract period for the reasons explained in regard to Request No. 7, above.

## ORDER OF COURT

And now, June 4, 1973, for the reasons set forth above, permission to inspect the records of plaintiff is granted to defendants with respect to Request No. 1. Plaintiff's objections to Requests Nos. 2 and 3 is sustained. The contents of Request No. 4 is granted but limited to cover the contract period of February 1969 to June 1971. As to Request No. 5, plaintiff is directed to supply the quantities of fish sold at various prices but is not required to furnish names of customers. Request No. 6 is granted insofar as it refers to the contract period. Request No. 7 is denied. Request No. 8 is granted but limited to the contract period.